IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| DANIEL JAMES GRAY | § | |
| v. | § | CIVIL ACTION NO. 5:20cv121 |
| SHARON WEBB, ET AL. | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>
<u>ON DEFENDANT RUST'S MOTION TO DISMISS</u>

The Plaintiff Daniel Gray, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. This Report concerns the motion to dismiss filed by the Defendant Officer Rebecca Rust.

**I. Background**

In his complaint, Plaintiff states that on June 27, 2018, his property was taken from him, including legal papers and books as well as other items. The inventory was for storage while he left the unit for a 90 day medical treatment. He states that he tried to stay with his property during the inventory, but Sgt. Duttine locked him in his cell and left with all his property.

Later, Plaintiff states he was presented with confiscation papers and a copy of the items logged on the inventory. However, the officers refused to show him what they had confiscated. Plaintiff states "the confiscation was too vague for me to actually know what had been taken," apparently referring to the confiscation papers. He complains that the kind of search of his legal material which they had done was against the administrative directives set out for legal documents.

Plaintiff again states that Sgt. Duttine and a captain identified as "Captain Doe" refused to show him what they had confiscated. Both of them refused to intervene and upheld the action of their officers.

Plaintiff asserts that he refused to sign either the confiscation papers or the inventory copy and asked that Officer Rust, the property officer, do a proper inventory before Plaintiff's departure the next morning. However, Rust did not inventory his property, but only circled items on one of the complained-of copies. Plaintiff states he complained again about not being told what items had been taken, and Rust told him to file a grievance. Plaintiff did file a grievance on the morning he left to go to the Stiles Unit. He received an answer and filed a Step Two appeal from the Stiles Unit on July 13, 2018. At that time, Plaintiff states he still had not received his property from the Telford Unit.

Several weeks later, Plaintiff says that his property finally arrived from the Telford Unit and he realized that a large amount of his legal property was missing. He reported this to the property officer at the Stiles Unit and filed two grievances there, but these grievances were "blocked" by the Stiles Unit property officer, S. Thomas. Plaintiff states that he wrote to Warden Parker at the Telford Unit as well as to Officer Rust.

In November of 2018, Plaintiff states he received an answer to his Step Two grievance and tried to file another grievance addressing his property loss, but this grievance was rejected as untimely. He filed a state court conversion / theft lawsuit, but it was dismissed for a minor deficiency. When he corrected the deficiency and sent the court "what they had dismissed me for," the case was dismissed as untimely even though it had been timely when it was filed. He appealed all the way to the Texas Supreme Court, which decline to review his appeal.

On November 14, 2018, Plaintiff states he filed another Step One grievance to report that his legal documents were still missing. This grievance was not processed because it was not timely filed. He continued to ask Officer Rust to find his property or make arrangements to have him reimbursed. Other items had been lost as well, including all of his property papers. Because he did not have his property papers, all of his property was confiscated at an annual shakedown. Plaintiff

2

states he filed another grievance, no. 2019107720, stating that his property papers were lost along with his legal documents. According to Plaintiff, the administration finally admitted that he should have his property which had been taken as a result of the property department losing his papers; however, his legal concerns were ignored and nothing was done about his transcripts and other items which went missing back in June.

Plaintiff says that the last grievance was processed by Warden Bates, and is indicative of what he has encountered for the past two years. He says he needs his transcripts and other documents containing evidence of improper analysis of DNA exhibits presented at trial in order to file meaningful post-conviction pleadings including a habeas petition. He also says that S. Thomas contributed to and is partially responsible for his inability to continue his post-conviction legal work, and Warden Bates did not address the loss of his legal records, but continued to avoid the fact and denied him fair process in recovering his loss.

## II. The Motion to Dismiss

Officer Rust has filed a motion to dismiss arguing that: (1) claims for monetary damages against her in her official capacity are barred by the Eleventh Amendment; (2) the Court lacks jurisdiction over any state law claims against her because they are barred by sovereign immunity and the Eleventh Amendment; (3) Plaintiff has failed to state a claim for deprivation of his right of access to court because he has failed to plead an actual injury in that he has not yet sought habeas corpus relief and thus is not prevented from doing so in the future, and can seek the transcripts and other documents from his trial through discovery; (4) Plaintiff has not pleaded facts showing his habeas claim is not frivolous; (5) Plaintiff does not plead personal involvement by Officer Rust in the confiscation of his property; and, (6) Officer Rust is entitled to qualified immunity.

## III. Plaintiff's Response

In his response to the motion to dismiss, Plaintiff states that Sgt. Duttine locked him in his cell and left the area with his property, against Plaintiff's wishes. Plaintiff states he was going to refuse the medical chain because he did not want his property inventoried out of his sight.

According to Plaintiff, Duttine and Webb went through his packed bags. During what was supposed to be an inventory, he states that they went through his legal documents, reading from his

3

material which is a violation of prison rules. In so doing, Plaintiff states that these officers decided that Plaintiff was in possession of legal briefs belonging to others. The officers removed an unknown number of books, files, and other items for "questionable ownership."

Some time later, Plaintiff says, Webb and another office came to his cell with an inventory copy and a confiscation copy. The inventory was not correct and the confiscation papers were too vague in the description of the seized items. Plaintiff states he got into a verbal dispute with Webb, telling her that she had no authority to read through his legal papers and that confiscation of a person's private documents was illegal. He asked her to bring Sgt. Duttine to his cell in an attempt to resolve the wrongful taking of his papers.

Plaintiff says he told Sgt. Duttine that the search was in violation of his rights and asked for the return of his property as he had decided not to go on the medical chain. However, Sgt. Duttine would not return his property even though Plaintiff can refuse a medical chain. Plaintiff asked to see the bag of confiscated items so he would know what was taken but Sgt. Duttine refused to show it to him, and a heated argument ensued.

Webb asked Plaintiff to sign a paper she had brought, but Plaintiff refused and asked that Rust do a "proper inventory" in the morning before Plaintiff's departure. Webb then threatened him with a disciplinary case for some other contraband items she said she had found. She insisted that Plaintiff sign the papers, but Plaintiff refused and Webb went back to the front.

Plaintiff says he asked Sgt. Duttine to call the captain on duty. He talked to the captain later, but after hearing Plaintiff's complaints, the captain refused to let him see the confiscated items or to order Sgt. Duttine to give him back his belongings.

The next morning, Plaintiff states he found out that he was going to the Stiles Unit for hepatitis medicine. He decided to go on the chain. Rust told him to identify the items Webb had left off of the inventory, and she circled items on the original copy. However, Plaintiff says that Rust told him she was not sure what was in the confiscated items but she said it was "not very much." Plaintiff states he was only worried about several legal books which had been sent to him from a prisoner's used book source. He asked Rust not to throw any of the items away until he had a chance to contest the taking, and Rust told him to file a Step One grievance, which he did.

About a month later, Plaintiff states his property was sent to the Stiles Unit. He went to the property room and saw only one box, so he asked if that was everything which had been shipped. He could see that there were about 2.5 cubic feet of legal papers missing, including his trial transcripts and defense file, as well as other items including all of his property papers for his fan and radio. He says that Sgt. Duttine had left his cell with approximately six bags full of his property.

Plaintiff asserts that he reported the missing property to officers at the Stiles Unit, who did an inventory of what had been sent. Regardless of what had originally been confiscated, Plaintiff states that there "was now a huge amount of missing stuff that was unquestionably my legal possessions." He tried to file grievances twice, but Officer Thomas, the Stiles Unit grievance officer, refused to process his report of missing property. He then wrote the warden at the Telford Unit and sent Rust an I-60 inmate request form, telling them that his legal documents were gone and asking them to locate the documents and save them until he returned.

Over the course of the next year, Plaintiff states he continually asked Rust to find his missing legal documents, but she led him to believe that his missing items were not part of the confiscated lot. He says that the discovery of the chain of possession by all of the defendants is necessary to his case.

**IV. Discussion**

A. General Standards for Motions to Dismiss

As a general rule, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are "viewed with disfavor and rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Fed. R. Civ. P. 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint, in contrast to a post-discovery motion for summary judgment, the determination of which revolves around whether a genuine issue of material fact remains after considering both sides' proffered evidence. *Rader v. Cowart*, 543 F.App'x 358, 2013 U.S. App. LEXIS 20415, 2013 WL 5509172 (5th Cir., October 4, 2013); *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000). The Court's task in reviewing a motion to dismiss is to determine whether the

plaintiff has stated a legally cognizable claim which is plausible, not to evaluate the plaintiff's likelihood of success. *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014).

In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief which is plausible on its face. *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Supreme Court stated that Rule 12(b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. at 555.

Fed. R. Civ. P. 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. *Id*. at 678.

A plaintiff meets this standard by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," or if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability. *Id*.; *see also Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006).

*Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. *Chhim v. University of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

If the facts alleged in a complaint do not permit the court to infer more than the mere possibility of misconduct, a plaintiff has not shown entitlement to relief. *Id*. (citing Fed. R. Civ. P.

8(a)(2)). Dismissal is proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. *Rios*, 444 F.3d at 421.

B. Application of the Law to the Present Case

In this case, Plaintiff contends he lost legal property he needed to seek habeas corpus relief, and he repeatedly contacted the unit property officer for assistance but to no avail. The Defendant argues *inter alia* that Plaintiff has not shown harm as a result of the loss of his legal property.

The Fifth Circuit has explained that the right of access to legal materials is simply an offshoot of the right of access to court, because the court's main concern is protecting the ability of the inmate to prepare a petition or complaint. *Mann v. Smith*, 796 F.2d 79, 83 (5th Cir. 1986).

While inmates have a right of access to court, an actual injury must be shown to set out a violation of this right. *Lewis v. Casey*, 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Mann*, 796 F.2d at 83. The Supreme Court provided the following examples of "actual injury":

> [The inmate] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered some arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Lewis*, 518 U.S. at 351; *see also McIntosh v. Thompson*, 463 F.App'x 259, 2012 U.S. App. LEXIS 3711, 2012 WL 602437 (5th Cir., February 24, 2012) (even if the destruction of the inmate's legal paperwork restricted his constitutional rights, the inmate failed to allege an injury in fact, which is required to state a claim for denial of meaningful access to the courts).

In *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court explained the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. *Id*. at 415. A plaintiff complaining of loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief must describe the predicate claim [i.e. the underlying case for which access to courts is sought] well enough to show the claim is not frivolous and the "arguable" nature of this claim is "more than hope." *Id*. at 416; *see also Lewis*, 518 U.S. at 353 and n. 3 (actual injury

requires the underlying claim for which access to court was allegedly denied be arguable and non-frivolous; depriving someone of a frivolous claim "deprives him of nothing at all, except perhaps the punishment of Rule 11 sanctions.")

In *Mendoza v. Strickland*, 414 F.App'x 616, 2011 U.S. App. LEXIS 2257, 2011 WL 396478 (5th Cir., February 3, 2011), the prisoner complained of interference with his right of access to court with relation to his criminal prosecution and his collateral post-conviction challenge. The Fifth Circuit determined the prisoner's complaint of interference with his criminal prosecution lacked merit because he was represented by counsel and thus his right of access to court had not been infringed. To the extent the prisoner complained of interference with his state post-conviction challenge, in which he proceeded *pro se*, the Fifth Circuit explained as follows:

> Even assuming arguendo that Mendoza's amended complaint includes a claim that the defendants interfered with the pursuit of his state post-conviction challenge, in which he proceeded *pro se*, we conclude that Mendoza failed to plead an actual injury, as required by the Supreme Court in *Harbury*. Under *Harbury*, the underlying cause of action is an element which must be affirmatively pleaded. 536 U.S. at 415, 122 S.Ct. 2179. In order to demonstrate actual injury, the complainant must show that the underlying cause of action was "arguable" and "non-frivolous." Id. Mendoza failed to provide any information about his state post-conviction application from which this court can conclude that the post-conviction application contained a "non-frivolous," "arguable" underlying claim.

As in *Mendoza*, Plaintiff has offered nothing to suggest that the habeas petition he wishes to file contains a non-frivolous, arguable underlying claim. He says only that his documents contain "evidence of improper analysis of DNA exhibits presented at his trial," but this oblique statement is not sufficient to show an arguable, non-frivolous claim. *See Cain v. Sucsy*, civil action no. 5:20cv297, 2021 U.S. Dist. LEXIS 251994, 2021 WL 6753661 (N.D.Tex., December 21, 2021), *Report adopted at* 2022 U.S. Dist. LEXIS 15656, 2022 WL 272113 (N.D.Tex., January 28, 2022), *citing Mendoza*, 414 F.App'x at *619. Because Plaintiff has not provided any information from which the court can conclude that his intended habeas petition contains an arguable, non-frivolous underlying claim, Plaintiff has failed to state a claim against Property Officer Rust for denial of access to court.

To the extent Plaintiff asserts a claim of deprivation property as such, his claim is foreclosed by the *Parratt/Hudson Doctrine*, which holds that random and unauthorized deprivations of property do not violate procedural due process if the State provides an adequate post-deprivation remedy. *See Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991). The doctrine applies when the deprivation is unpredictable, pre-deprivation process is impossible, and the conduct of the state actor was unauthorized; when these conditions exist, the State cannot be required to do the impossible by providing pre-deprivation process. *Charbonnet v. Lee*, 951 F.2d 638, 642 (5th Cir. 1992). Random and unauthorized acts, even if purportedly done under established state procedures or by high-ranking employees, fall within the scope of *Parratt* and *Hudson*. *Holloway v. Walker*, 784 F.2d 1287, 1292-93 (5th Cir. 1986), *opinion denying rehearing* 790 F.2d 1170, 1172-73 (5th Cir. 1986).

Plaintiff asserts the taking and retention of his property was done improperly and in violation of regulations, rendering it "random and unauthorized" within the meaning of *Parratt* and *Hudson*. Although Plaintiff states that he unsuccessfully sought relief in state court, the Fifth Circuit has stated that a state post-deprivation remedy is not inadequate simply because the state court determines that a prisoner has forfeited his right to seek recovery under state procedural laws. *Agim v. Lumpkin*, 35 F.App'x 389, 2002 U.S. App. LEXIS 28564, 2002 WL 758769 (5th Cir., April 11, 2002). The fact that a prisoner was unsuccessful in a state court filing, or that he may not be able to recover under Texas state remedies the full amount he could receive in a § 1983 lawsuit, also does not render state remedies inadequate or unavailable. *Leggett v. Williams*, 277 F.App'x 498, 500, 2008 U.S. App. LEXIS 9897, 2008 WL 1984271 (5th Cir., May 8, 2008), *citing Holloway*, 784 F.3d at 1293. Thus, the fact that Plaintiff's lawsuit in state court was unsuccessful for procedural reasons does not render the available state remedies inadequate. Plaintiff has failed to state a claim upon which relief may be granted against Property Officer Rebecca Rust.

To the extent Plaintiff raises state law questions under the Court's supplemental jurisdiction, *see* 28 U.S.C. §1367, The Fifth Circuit has stated as a general rule, the district court should decline to exercise supplemental jurisdiction when all federal claims are dismissed or eliminated prior to trial. *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999); *Heggemeier v. Caldwell County, Texas*, 826 F.3d 861, 872 (5th Cir. 2016).

## RECOMMENDATION

It is accordingly recommended that the Defendant Rebecca Rust's motion to dismiss (Dkt. No. 12) be granted and the Plaintiff's claims against her dismissed with prejudice for failure to state a claim upon which relief may be granted.  It is further recommended that the statute of limitations on any state law claims which Plaintiff may have against Rust be tolled for a period of 30 days following the entry of the judgment of dismissal. 28 U.S.C. §1367(d). The tolling of the limitations period should have no effect upon any claims which were already barred by limitations at the time the present lawsuit was filed.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found.

An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

SIGNED this the 9th day of August, 2022.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE