IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| DANIEL JAMES GRAY | § | |
| v. | § | CIVIL ACTION NO. 5:20cv121 |
| SHARON WEBB, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
ON MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION

The Plaintiff Daniel Gray, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. This Report concerns the motion for summary judgment on the issue of exhaustion of administrative remedies filed by the Defendants Sgt. Duttine, Officer Rust, and Officer Webb.

**I. Background**

In his complaint, Plaintiff states that on June 27, 2018, his property was taken from him, including legal papers and books as well as other items. The inventory was for storage while he left the unit for a 90 day medical treatment. He states that he tried to stay with his property during the inventory, but Sgt. Duttine locked him in his cell and left with all his property.

Later, Plaintiff states he was presented with confiscation papers and a copy of the items logged on the inventory. However, the officers refused to show him what they had confiscated. Plaintiff states "the confiscation was too vague for me to actually know what had been taken,"

apparently referring to the confiscation papers. He complains that the kind of search of his legal material which they had done was against the administrative directives set out for legal documents.

Plaintiff again states that Sgt. Duttine and a captain identified as "Captain Doe" refused to show him what they had confiscated. Both of them refused to intervene and upheld the action of their officers.

Plaintiff asserts that he refused to sign either the confiscation papers or the inventory copy and asked that Officer Rust do a proper inventory before Plaintiff's departure the next morning. However, Rust did not inventory his property, but only circled items on one of the complained-of copies. Plaintiff states he complained again about not being told what items had been taken, and Rust told him to file a grievance. Plaintiff did file a grievance on the morning he left to go to the Stiles Unit. He received an answer and filed a Step Two appeal from the Stiles Unit on July 13, 2018. At that time, Plaintiff states he still had not received his property from the Telford Unit.

Several weeks later, Plaintiff says that his property finally arrived from the Telford Unit and he realized that a large amount of his legal property was missing. He reported this to the property officer at the Stiles Unit and filed two grievances there, but these grievances were "blocked" by the Stiles Unit property officer, S. Thomas. Plaintiff states that he wrote to Warden Parker at the Telford Unit as well as to Officer Rust.

In November of 2018, Plaintiff states he received an answer to his Step Two grievance and tried to file another grievance addressing his property loss, but this grievance was rejected as untimely. He filed a state court conversion / theft lawsuit, but it was dismissed for a minor deficiency. When he corrected the deficiency and sent the court "what they had dismissed me for," the case was dismissed as untimely even though it had been timely when it was filed. He appealed all the way to the Texas Supreme Court, which decline to review his appeal.

On November 14, 2018, Plaintiff states he filed another Step One grievance to report that his legal documents were still missing. This grievance was not processed because it was not timely filed. He continued to ask Officer Rust to find his property or make arrangements to have him reimbursed. Other items had been lost as well, including all of his property papers. Because he did

not have his property papers, all of his property was confiscated at an annual shakedown. Plaintiff states he filed another grievance, no. 2019107720, stating that his property papers were lost along with his legal documents. According to Plaintiff, the administration finally admitted that he should have his property which had been taken as a result of the property department losing his papers; however, his legal concerns were ignored and nothing was done about his transcripts and other items which went missing back in June.

Plaintiff says that the last grievance was processed by Warden Bates, and is indicative of what he has encountered for the past two years. He says he needs his transcripts and other documents containing evidence of improper analysis of DNA exhibits presented at trial in order to file meaningful post-conviction pleadings including a habeas petition. He also says that S. Thomas contributed to and is partially responsible for his inability to continue his post-conviction legal work, and Warden Bates did not address the loss of his legal records, but continued to avoid the fact and denied him fair process in recovering his loss.

## II. The Motion for Summary Judgment

In their motion for summary judgment, the Defendants argue that in grievance no. 2018156071, Plaintiff grieved the issue of materials confiscated due to questionable ownership. They contend as follows:

> Plaintiff never grieved the issue of denial of access to court, nor is there anything in Plaintiff's grievances resembling claims of injury to any ongoing litigation. At most Plaintiff's grievance demonstrates only dissatisfaction with the way in which his complaints were handled. Failure to handle grievances and resolve complaints to an inmate's satisfaction cannot be the basis of a constitutional claim, however, and so no claim against Defendants is exhausted.
>
> No exhausted grievance filed by Plaintiff asserts any cognizable claim of unconstitutional deprivation of access to courts rights against Defendants Webb, Duttine, or Rust. Plaintiff has thus never given prison officials an opportunity to resolve these claims through the administrative process. Plaintiff has not satisfied his obligations under the Prison Litigation Reform Act, and his claims against these defendants must be dismissed.

As summary judgment evidence, the Defendants attach copies of Plaintiff's Step One and Step Two grievance no.'s 2018156071. The Step One grievance reads as follows:

> I was told to pack up for medical chain. The officer on duty in J Section 8 Building was coming back to go over the inventory with me. When he returned, plans had changed and someone up front was going to do the inventory. I tried to go up front

> to watch the inventory but was refused. Usually the inventory is done in dayroom in the presence of the offender. I objected to not being present while my property was inventoried. Later, a female officer came to my cell with confiscation papers and an inventory (Prop-05). The confiscation papers were too vague for me to know what was actually taken. I looked at inventory and discovered that the officer had not listed several items. Amongst other items she failed to list my radio and fan. I refused to sign both papers. I want to contest the finding that these items taken do not belong to me. Since I will be gone till July 6 I am filing this grievance before I leave T.O.

The response to this grievance stated "Investigation revealed you had your fan and radio in your possession and they were added to the Prop-05. The property confiscated on 6-27-18 was miscellaneous legal work belonging to multiple offenders, books, and headphones. The items were confiscated due to questionable ownership. No further action is warranted."

The summary judgment evidence shows that Plaintiff then filed a Step Two appeal of this grievance which reads as follows:

> Continuing appeal because the circumstances involved inventory / search of my property without me being present gives me no way to know what books and legal work were confiscated. I had all kinds of different items that might fall into the vague description given on the confiscation papers. For instance, was the book confiscated my habeas law book or my Georgetown Law Review or was it some dime novel I wouldn't waste my time with complaining about. There were several very important law books which were used, they had previous owners who may have put their names in there. The point is that the "Books through Bars" program mailed them to me. The mail room checked them and forwarded the used books to me. I marked out any old name if there was one and put my name and TDC # in the used books. I believe I have the right to have another offender's legal [illegible] while I am helping them. Because I was not present when search was done I cannot know what was actually taken. What this scenario means is this: An officer can take my property outside my presence and designate it as questionable [illegible] and not questioned so my authorized property is taken. Also see AD 03.72 legal materials include books, pleadings, and drafts. There is no other review and I don't know which books were taken until my property arrives at new unit in 30 days. This is clearly unfair. I had no way to try and preserve issue before confiscation. If my habeas book or law review were among these items, they belong to me.

The response to this grievance says "a review of your Step One grievance was conducted and the grievance was investigated in accordance with grievance procedures and you were appropriately advised at the unit level. No errors or policy violations have been noted regarding the property that was confiscated on 6/27/18. Said confiscated property was handled in accordance with property policy AD 03.72. No further action is warranted."

**III. Plaintiff's Response to the Motion for Summary Judgment**

In his response to the Defendants' motion, Plaintiff refers to grievance no. 2019107720, which was signed on May 15, 2019. This grievance complains of a shakedown on April 1, 2019, in which his appliances and religious items were taken; Plaintiff said that it happened because the property department had lost a whole bag of property when he went on the chain, and every time he asks Officer Rust about it, she says she does not have time. He asked her about replacing his property papers, but she referred him to the law library, but they "will not cut me any property papers because I am indigent." He is faced with having his legal work, transcripts, and other items lost through no fault of his, and so in addition no not being able to continue his actual innocence litigation, he is faced with losing his lost property. The copy of the Step One grievance which Plaintiff attaches to his response (docket no. 22-1, p. 2) is incomplete because page two of the copy of the grievance attached is actually the second page of the Step Two grievance appeal rather than the Step One grievance. *See* docket no. 1-1, pp. 1-2.

In the Step Two appeal of grievance no. 2019107720, Plaintiff states the Step One response is not fair because even though he has written to Warden Parker and property officer Rust has been advised of numerous occasions of Plaintiff's loss of two cubic feet of legal documents, TDCJ employees are not accepting responsibility for their negligence. He says he has not been able to pursue his litigation because all of his transcripts and defense file are among the property which was lost. He says he has been reasonable about the loss up until the loss of his property at the shakedown, and acknowledges that Major Hooper tried to help him because the law library issued him new property papers even though he is indigent. Every time he tries to contact Warden Parker or Officer Rust, his requests are met with indifference. He asks for compensation or for his property to be replaced, although some items cannot be replaced. The response to the Step Two grievance appeal says "Step One has addressed your complaint. Records indicate you signed the Prop-08 on 5/7/19, receiving property that was confiscated. No further action is warranted."

Plaintiff states that when he received the answer back to Step Two grievance appeal no. 2018156071, he was already back at the Telford Unit, and he had told Officer Rust three separate times that there was more missing than what she claimed was confiscated. He says that after he

received the response to this grievance, he filed another grievance about his missing legal work, but it was denied as untimely. Plaintiff says that his property papers and confiscated appliances were returned, but his complaint about the missing files and transcripts has been ignored.

## IV. Discussion

The law governing the exhaustion of administrative remedies is found in 42 U.S.C. § 1997e, which provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this statute, prisoners are required to exhaust available administrative remedies before filing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 202, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Proper exhaustion is required, meaning the prisoner must not only pursue all available avenues of relief, but must also comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89-95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). This requirement means mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust administrative remedies properly. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

All of the steps in a facility grievance procedure must be pursued in order to exhaust administrative remedies. *Johnson*, 385 F.3d at 515. This means that in order for prisoners of the Texas Department of Criminal Justice - Correctional Institutions Division to exhaust an issue properly, the issue must be presented in a Step One grievance and then appealed to Step Two. New issues cannot be raised for the first time in a Step Two grievance appeal and only one issue per grievance may be presented. *Randle v. Woods*, 299 F.App'x 466, 2008 U.S. App. LEXIS 24138, 2008 WL 4933754 (5th Cir., November 19, 2008), *citing Woodford*, 548 U.S. at 92-93 *and Johnson*, 385 F.3d at 515; *see also* TDCJ Offender Orientation Handbook, February 2017, p. 74 (inmates may present only one issue per grievance) (available online at https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf). Furthermore, the district court may not excuse failure to exhaust available administrative remedies prior to filing a lawsuit under the Prison

6

Litigation Reform Act, even to take "special circumstances" into account. *Ross v. Blake*, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016).

The Fifth Circuit has stated that the exhaustion requirement must be interpreted in light of its purposes, which include the goal of giving prison officials "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 516, *citing Porter v. Nussle*, 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Thus, a grievance is considered sufficient to the extent it "gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson*, 385 F.3d at 517. The amount of information necessary depends to some extent on the type of problem about which the prisoner complains. In this regard, the Fifth Circuit explained as follows:

> If an inmate claims that a guard acted improperly, we can assume that the administrators responding to the grievance would want to know—and a prisoner could ordinarily be expected to provide—details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter. In contrast, a grievance in which an inmate says that his cell is habitually infested with vermin, or that the prices in the commissary are too high, could adequately alert administrators to the problem whether or not the grievance names anyone. *Compare Curry v. Scott*, 249 F.3d 493, 505 (6th Cir.2001) (holding that a grievance specifically complaining of a beating at the hands of one guard did not suffice to exhaust a failure-to-protect claim against another guard, not mentioned in the grievance, who stood by and watched), *with Brown v. Sikes*, 212 F.3d 1205, 1207–10 (11th Cir.2000) (holding that a prisoner who knew only that he had not received prescribed medical equipment had exhausted his claim, notwithstanding that his grievance did not name anyone).

*Johnson*, 385 F.3d at 517.

However, the Fifth Circuit went on to clarify as follows:

> We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation. Cf. *Brown*, 212 F.3d at 1207–10 (rejecting a rule that a prisoner must always name defendants in his grievance). But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem.

*Id*. at 522.

Defendants' motion for summary judgment argues that "Plaintiff never grieved the issue of denial of access to court, nor is there anything in Plaintiff's grievances resembling claims of injury

to any ongoing litigation. ..... No exhausted grievance filed by Plaintiff asserts any cognizable claim of unconstitutional deprivation of access to courts rights against Defendants Webb, Duttine, or Rust."

However, the Fifth Circuit has expressly stated that prisoners need not present legal theories in grievances. *Johnson*, 385 F.3d at 517-518 (citing with approval cases holding that "we would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory" and that prisoners need not present legal theories as long as prison rules do not require that). The court observed that "the purpose of the exhaustion requirement is to give prison administrators an opportunity to address a problem, and they can do this whether or not the prisoner tells them the constitutional provisions that the problem implicates. Further, TDCJ rules specifically instruct inmates to provide facts, not legal terminology." *Id.* at 518.

A complaint that a prisoner was denied his constitutional right of access to court is a legal theory, and as such, Plaintiff was not required to present it in his grievance. Consequently, the fact that Plaintiff's grievance did not "assert any cognizable claim of unconstitutional deprivation of access to courts rights against Defendants Webb, Duttine, or Rust" does not show that he failed to exhaust his administrative remedies.

Instead, Plaintiff is required only to give the prison officials a fair opportunity to address the problem that will later form the basis of the lawsuit. In this case, that problem involved the confiscation of his property, and the prison officials were able to investigate the complaint, as shown by the responses to Plaintiff's Step One and Step Two grievances. The Defendants have not shown that they are entitled to summary judgment on the issue of exhaustion of administrative remedies, and their motion to this effect should be denied.

## RECOMMENDATION

It is accordingly recommended that the Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies (Dkt. No. 21) be denied.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found.

An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

SIGNED this the 9th day of August, 2022.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE